IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 21 C 50291 |
| CHARLES GRIFFIN, | ) ) ) |
| Defendant. | ) ) |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On July 14, 2022, the Court held an evidentiary hearing on Charles Griffin's motion under 28 U.S.C. § 2255. For the reasons stated below, the Court grants Griffin's motion. This constitutes the Court's findings of fact and conclusions of law.

### Background

**A.    The charges and the disposition**

In February 2018, Griffin was charged with three counts of distributing cocaine base and one count of possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Griffin, who was in custody at the Winnebago County Jail at the time on pending state criminal charges, retained Glenn Jazwiec to represent him in both his state and federal cases.

Griffin attempted through Jazwiec to provide a "proffer" to the government in the hope of obtaining a favorable deal, but those efforts were unsuccessful. In January 2020, Griffin entered a guilty plea to all charges pursuant to a plea agreement. The

Court later sentenced Griffin to a 110-month prison term.

**B.      Griffin's section 2255 motion**

Griffin filed a *pro se* section 2255 motion arguing that the Court erred in failing to credit his sentence for time spent in pretrial custody.  (Griffin admits in his reply brief that this argument is moot, so the Court need not address it here.)  Griffin later filed a supplement to his motion in which he argued that Jazwiec had an actual conflict of interest because he concurrently represented both Griffin and individuals against whom Griffin attempted to proffer information to the government.  Griffin retained counsel, and the Court ordered an evidentiary hearing on the conflict of interest claim.

**C.      Facts**

At the evidentiary hearing, both Griffin and Jazwiec testified.  There were two other witnesses:  Griffin's fiancée Anna Jones and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) special agent Daniel Bergagna.  Jones sometimes communicated with Jazwiec on behalf of Griffin, and Bergagna was present during the government's meeting with Griffin and Jazwiec about the proffer.  The Court finds the facts as follows, having made judgments regarding the credibility of the witnesses and the weight to be given their testimony.

In April 2018, Griffin wrote a letter to the Assistant United States Attorney (AUSA) assigned to his case, Talia Bucci, asking to discuss a proffer.  Griffin also stated in his letter that he would likely need to discharge Jazwiec if the process moved forward because of the information he sought to proffer.  The government sent the letter to Jazwiec, who visited Griffin in jail a few weeks later.  The parties agree that during that meeting, Jazwiec discussed the potential negative consequences of pursuing a proffer

with Griffin. Jazwiec stated that this was part of his regular practice; Griffin saw it as an attempt to dissuade him from proffering.

There is a dispute over what transpired during other private discussions between Griffin and Jazwiec, and the Court finds Griffin's testimony more credible. Griffin testified that Jazwiec visited him again approximately a month later and asked why Griffin believed he would need to discharge Jazwiec if the proffer occurred. Griffin told Jazwiec that he wanted to proffer information against at least four of Jazwiec's other clients. The Court finds Griffin's testimony on these points credible, in part because he was able to name those four individuals during the evidentiary hearing and recall whether they were past or current clients of Jazwiec's at the relevant time.[1] Griffin also testified credibly that he knew Jazwiec represented those individuals because three of them—one of whom used to live with Griffin—told him so, and he had seen Jazwiec representing the fourth individual during a state court appearance.

In contrast, Jazwiec's claim that he did not know Griffin wanted to proffer information about his other clients was difficult to believe, and the Court did not find it credible. Jazwiec testified that he has practiced law for over thirty-five years, represented criminal defendants in both state and federal court, and conducted proffers on behalf of other clients in federal matters. He also admitted that his usual practice is to know the details of what a client seeks to proffer before meeting with the government, as he knows that the success of a proffer often depends on the value of the information

---

[1] Griffin's testimony was also corroborated by his letter to AUSA Bucci, contemporaneous with the relevant events, stating that he would have to discharge Jazwiec if he gave a proffer and making it relatively clear that this was because he had information against other clients of Jazwiec.

3

provided. But in this case, Jazwiec claimed that he knew nothing about the information Griffin planned to proffer except that it related to guns, drugs, and murders generally. Jazwiec provided no explanation for this departure from his normal practice, and during cross-examination, he stated that he did not recall even asking Griffin about any details relating to the drugs, guns, or murders. When questioned by the Court, however, Jazwiec shifted ground, claiming that he asked Griffin for specifics but that Griffin refused to disclose any details. The Court did not find that credible either. Jazwiec's testimony was also inconsistent with his prior statements to the Court: he stated during Griffin's change of plea hearing that he had conveyed information to the government during the proffer meeting, but he testified during the evidentiary hearing that he had provided no such information.

      The Court credits Griffin's testimony and concludes that he made Jazwiec aware that he intended to proffer information against other clients that Jazwiec represented. Jazwiec did not move to withdraw from representing Griffin at that time, and instead agreed to communicate with the government on Griffin's behalf about a proffer. The problem, however (or at least one of the problems), was that Jazwiec never actually carried this out.

      In November 2018, Jazwiec received a letter from the government expressing its willingness to conduct a proffer session with Griffin. The government asked that Griffin read and sign the letter, which Griffin did after an associate of Jazwiec's brought it to him at the jail. Neither Jazwiec nor his associate explained the contents of the letter to Griffin.

      In February 2019, Griffin and Jazwiec met with AUSA Bucci, ATF agent

Bergagna, and other law enforcement agents to discuss a proffer. After Jazwiec admitted that he had not reviewed the government's letter with Griffin, Bucci read the letter out loud and answered Griffin's questions about whether the proffered information could be used against him. Griffin testified that he did not discuss any information with the government, as Jazwiec asked to talk to him privately before he had the chance to do so. During those private discussions, Griffin shared with Jazwiec more details about the murders that were the subject of the proffer. Jazwiec then proposed that he conduct an "attorney proffer" to reduce the risk of the information adversely affecting Griffin. Griffin agreed, and Jazwiec ended the meeting with the government. Agent Bergagna also testified that neither Griffin nor Jazwiec shared any information with the government during the meeting. The parties stipulated that Jazwiec never provided an attorney proffer to the government on Griffin's behalf—despite promising Griffin that he would do so.

After the February 2019 proffer meeting was unsuccessful and no attorney proffer occurred, Griffin sought to discharge Jazwiec and secure other counsel. Another attorney met with Griffin in May or June 2019 and intended to take his case, but was unable to do so after the government advised that attorney of a possible conflict. Despite being unable to secure other representation, Griffin, his fiancée Anna Jones, and his daughter asked Jazwiec on several occasions to withdraw as Griffin's attorney. Jazwiec filed a motion to withdraw in August 2019, but he stated only that his representation would not be in Griffin's best interest and provided no further details. The Court denied that motion without prejudice a month later due to the lack of any explanation or supporting information.

Griffin entered a plea of guilty in January 2020, less than two weeks before the trial date, which had been set back in mid-September 2019.  During the hearing, Griffin stated that he had not had enough time to talk to Jazwiec about the plea agreement.  The Court recessed the hearing to give them an opportunity to speak further.  After the recess, Griffin said he had sufficient time to discuss the plea agreement, but shortly thereafter, in response to a separate question, he expressed dissatisfaction with his attorney Jazwiec.  When the Court probed further, Griffin said he would have preferred a different attorney, Kristin Carpenter, and that Jazwiec "wouldn't have been my preferred counsel of choice."  Case No. 18 CR 50010, dkt. no. 108 at 9.  At this point AUSA Bucci reminded the Court of the earlier hearing at which Jazwiec had moved to withdraw.  AUSA Bucci said that at that time Griffin had been attempting to retain a different attorney, and "I discussed with her a potential conflict, and she then told me that she was not going to come in on the matter."  *Id.*  The Court then asked whether Griffin was satisfied with Jazwiec's work.  After some back-and-forth, Griffin said, "I think he could have secured me a proffer."  *Id.* at 10.  With the agreement of the government, the Court held an *ex parte* conversation at sidebar with Griffin and Jazwiec to discuss the issue.  At the sidebar, Griffin recounted that he had written to AUSA Bucci about wanting to give a proffer; AUSA Bucci had provided his letter to Jazwiec; and then he and Jazwiec "had a difference about it initially," that is, in 2018.  Case No. 18 CR 50010, dkt. no. 109 at 2.  Griffin further stated that "we did a proffer in 2019, and at that time like most of the information I had would have been stale."  *Id.*  (This was an apparent reference to the abortive proffer meeting previously discussed.)  Griffin told the Court that Jazwiec "still didn't give me a chance to converse then, and everything they

discussed was outside of the room, and then he said he was going to do an attorney . . . proffer. And nothing ever came of it." *Id.* at 3. The Court asked if Jazwiec could elaborate, and he said the following:

> MR. JAZWIEC: Judge, the only thing I can say is we had a proffer where we gave – we sat down with law enforcement.
>
> THE COURT: When you say we, that's you?
>
> MR. JAZWIEC: Me, the officers that were there, to provide information which would be beneficial to him, *and nothing came out of it*.
>
> THE COURT: Okay. *So, in other words, the information that Mr. Griffin had been talking about, you conveyed that to law enforcement, and nothing happened on it.*
>
> MR. JAZWIEC: *Correct*. We conveyed -- there were a lot of different issues and information that we dealt with to see if anything would be to their benefit to possibly help his disposition.

*Id.* at 3-4 (emphasis added). After concluding the *ex parte* discussion, the Court found that the information disclosed by Griffin about his problems with Jazwiec (which, to reemphasize, AUSA Bucci had not heard because it was disclosed *ex parte*) did not impact the knowingness or voluntariness of Griffin's guilty plea. In doing so, the Court, unfortunately, took Mr. Jazwiec's word for the proposition that he had conveyed Griffin's information to the government and that "nothing came out of it." See Dkt. no. 108 at 11. The Court then accepted Griffin's guilty plea.

Later, when the government responded to Griffin's section 2255 motion, the government advised that what Jazwiec had told the Court about the proffer was incorrect. *See* United States' Resp. to Def.'s § 2255 Mot. at 3 n.2. If the Court had understood this at the time, it would have inquired further, likely would have discovered the conflict issue relating to attorney Jazwiec, and would not have accepted Griffin's

7

guilty plea. To put a fine point on it, the Court accepted Griffin's guilty plea because of Jazwiec's false statement that he had conveyed Griffin's information to the government via an attorney proffer and that nothing had come of it. The Court concluded, based on that statement, that Griffin's problem regarding Jazwiec's representation of him was an immaterial issue. This, as it turns out, was wrong. To be clear, no part of this was the fault of the government, and none of it is the fault of Griffin; it's on the Court for not inquiring in a sufficiently probing way and for accepting attorney Jazwiec's misleading rendition of his discussions with the government.

## Discussion

In his motion, Griffin argues that Jazwiec provided ineffective assistance of counsel in violation of the Sixth Amendment. He contends that Jazwiec had an actual conflict of interest due to his concurrent representation of other defendants against whom Griffin sought to proffer information.

Under 28 U.S.C. § 2255, a court may vacate, set aside, or correct a sentence imposed in violation of the laws of the United States. "The Sixth Amendment guarantees criminal defendants effective assistance of counsel. Included within this right is the right to representation 'free from conflicts of interest.'" *United States v. Coscia*, 4 F.4th 454, 475 (7th Cir. 2021) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). A defendant can assert a claim based on his counsel's conflict of interest by showing that (1) "his counsel had a potential conflict of interest and that the potential conflict prejudiced his defense," or (2) "an *actual* conflict of interest adversely affected his lawyer's performance." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (citations omitted) (emphasis in original). An actual conflict exists when an attorney

"actively represents incompatible interests; it is more than a 'mere theoretical division of loyalties,'" *United States v. Fuller*, 312 F.3d 287, 291 (7th Cir. 2002) (quoting *Mickens v. Taylor*, 535 U.S. 162, 173 (2002)), or faces "a choice between advancing his own interests above those of his client." *Hall*, 371 F.3d at 973.

The government argues that there was no actual conflict because the proffer discussion was unsuccessful. Specifically, the government contends that there was at most a potential conflict of interest, as it never planned to call Griffin to testify against Jazwiec's other clients and those other individuals were not Griffin's codefendants.[2] This argument is unavailing, however, as a defense counsel's actual conflict of interest does not depend on the government's plans or ongoing cases against codefendants. *See Hall*, 371 F.3d at 973 (finding that the defense counsel had an active conflict even though the defendant was never called to testify and his co-defendants already pled guilty). And that aside, it's difficult to accept this contention by the government given the fact that it *never actually got* the information that Griffin wanted to proffer.

More importantly, the government overlooks whether Jazwiec had an actual conflict that may have caused the proffer process to fail in the first place. The parties do not dispute that Jazwiec was advising Griffin throughout the proffer process. And for the reasons the Court has discussed, the Court credits Griffin's testimony that he told Jazwiec the names of the four individuals against whom he sought to proffer information and discredits Jazwiec's contrary testimony. Jazwiec admitted during the evidentiary

---

[2] The government also argued in its pre-hearing brief that there was no actual conflict because Griffin did not divulge the identities of Jazwiec's other clients or explain his basis for believing Jazwiec had a conflict of interest. Because Griffin identified four other individuals and explained his basis for believing they were Jazwiec's clients during the evidentiary hearing, this argument is moot.

hearing that he had represented those individuals. Thus he faced more than a "mere theoretical division of loyalties" upon learning that one of his clients sought to cooperate in criminal proceedings against the others. *Fuller*, 312 F.3d at 291 (internal quotation marks omitted). Jazwiec instead "actively represent[ed] incompatible interests" by simultaneously representing both Griffin and the subjects of Griffin's attempted proffer. This indicates that there was an actual conflict of interest. *Id.*

When a defendant's counsel has an active conflict, the next step is to determine whether the conflict "adversely affected" that attorney's performance. *Hall*, 371 F.3d at 973 (*citing Culyer v. Sullivan*, 446 U.S. 335 (1980)). This is "significantly easier than showing 'prejudice,'" *id.*, as a defendant demonstrates an adverse effect by establishing that "but for the attorney's actual conflict of interest, there is a reasonable likelihood that counsel's performance somehow would have been different." *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009) (internal quotation marks omitted). "[A] petitioner who pleaded guilty upon the advice of an attorney with a conflict of interest is not required to demonstrate that he would have decided against pleading guilty had he been represented by a conflict-free attorney." *Hall*, 371 F.3d at 974. "The proper focus is instead 'on whether the defense counsel's conflict affected his actions and the defendant's decision to plead guilty, not whether another attorney without conflict would have made the same recommendation.'" *Burkhart v. United States*, 27 F.4th 1289, 1296 (7th Cir. 2022) (quoting *Hall*, 371 F.3d at 974).

Given Jazwiec's active role in every stage of the proffer process, there is more than a reasonable likelihood that his performance would have been different if he had no conflict of interest. He handled all communications with the government other than

10

Griffin's initial letter, represented Griffin at the only meeting between the parties, and agreed to undertake an attorney proffer but then did not carry this out. An unconflicted attorney would have attempted an attorney proffer after promising to do so, or at least would have assisted his client in sharing some information during the client's proffer meeting. Jazwiec instead ended the discussion at the meeting before the government even finished explaining the terms of its proffer letter—an explanation that was necessitated only because Jazwiec had failed to review the contents of the letter with Griffin or otherwise prepare him ahead of the meeting, something any reasonable attorney in this situation would have done. Jazwiec also misinformed the Court during the change of plea hearing when he stated that Griffin had proffered information, and the Court directly relied on that representation in accepting Griffin's guilty plea. Jazwiec was unable to provide a satisfactory explanation when questioned by the Court about this mistake during the evidentiary hearing. It is overwhelmingly unlikely that an attorney unburdened by a conflict of interest would have done the same. Griffin's statements during his change of plea hearing indicate that Jazwiec's failure to conduct a proffer "affected [Griffin's] actions and his decision to" accept the plea deal he was ultimately offered. *Burkhart*, 27 F.4th at 1296. For all of these reasons, the Court finds that Griffin has established that Jazwiec's conflict had an adverse effect on his performance and on Griffin's decision to plead guilty under the deal that he had been offered.

     Having established that Jazwiec had an actual conflict of interest and that the conflict adversely affected his performance as well as Griffin's guilty plea, Griffin is entitled to relief under section 2255. The statute permits a court to vacate, set aside, or

correct a sentence, and courts have the discretion to craft an appropriate remedy that "restore[s] the defendant and the prosecution to the precise positions they occupied prior to the" constitutional violation. *Lafler v. Cooper*, 566 U.S. 156, 172 (2012) ("Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'"); *see also Day v. United States*, 962 F.3d 987, 994 (7th Cir. 2020) (if a defendant establishes a Sixth Amendment violation, "the judge should grant [his] § 2255 motion and, within her discretion, craft an appropriate remedy"); *Estremera v. United States*, 724 F.3d 773, 779 (7th Cir. 2013) (directing the government to offer a rejected plea deal is a "possible remedy" but not "the only permissible remedy").

The appropriate remedy in this case is not, as Griffin suggests, to provide him with a re-sentencing; rather it is to restore him and the government to the positions they were in before Jazwiec undermined the proffer process. Resentencing would not achieve this result, as this Court does not have any more relevant information now than it did at sentencing, and there is no rejected plea for the Court to direct the government to offer again.[3] Agent Bergagna's testimony, however, suggests that the government

---

[3] The hoped-for result of most proffers is a cooperation agreement and a corresponding sentence reduction, or in some cases the dropping of at least some charges. That, of course, depends on the government, which in Griffin's case never had a chance to assess and evaluate the information that Griffin says he possessed. In some cases, however, "cooperation" that does not result in a mutual agreement for a specific benefit nonetheless may be argued as a mitigating factor at sentencing. This never happened here, as Griffin was prevented from conveying his information to the government. The Court cannot rule out the possibility that Griffin's attempt to cooperation might warrant some consideration at sentencing even if his information is now stale and not valuable enough to get him an agreement by the government for a reduction of some sort. But it's hard to assess that without any idea of the nature and quality of the information that Griffin wanted to proffer, which the Court is not privy to at this point in any meaningful

may still have an interest in the information Griffin has to proffer, and other courts have vacated defendants' guilty pleas upon granting section 2255 motions because of counsel's conflict of interest. *See, e.g.*, *United States v. Berberena*, 642 F. Supp. 2d 445, 456 (E.D. Pa. 2007) ("[Defendant's counsel]'s conflict of interest requires the Court to vacate [Defendant]'s guilty plea rather than simply re-sentence him."); *Trejo v. United States*, 66 F. Supp. 2d 1274, 1286 (S.D. Fla. 1999) ("[Defendants'] respective guilty pleas must be set aside on the grounds of ineffective assistance of counsel, arising from prejudicial conflict of interest, as well as prejudicially inadequate representation.") To that end, the Court concludes that vacating Griffin's guilty plea would allow the parties themselves to decide how they wish to proceed, this time without the adverse effects of Jazwiec's conflict of interest.

## Conclusion

For the reasons stated above, the Court grants defendant's section 2255 motion [dkt no. 1]. The Court believes that the appropriate relief is to vacate Griffin's guilty plea and sentence. For this reason, the judgment in Case No. 18 CR 50010, entered on the docket on August 19, 2020, is hereby vacated, as is the Court's acceptance of Griffin's January 2020 guilty plea. The Court will set the criminal case for a status hearing to discuss further proceedings consistent with the Court's rulings in this matter. Mr. Griffin's counsel is directed to promptly communicate the Court's ruling to him.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 8, 2022

---

way. Thus the Court does not see any viable appropriate remedy for Jazwiec's conflict of interest other than allowing Griffin to withdraw his guilty plea.